May it please the Court, Mr. Aioli, Mr. Warren. My name is Michael Vadas. I represent the insurance company of the State of Pennsylvania, which I may refer to by its acronym, ICOSOC. Really? How about the company? The company is fine if you prefer, Your Honor. Yeah. English is the default rule. Okay. I must have spent too much time in the federal government. That's okay. They like acronyms. This case arises from a flood in Thailand. Sure, we know. Which caused great damage to... I've had this case once before. Yes, you have, Your Honor. You're on the panel. So the issue before us today, before the court, is whether the $30 million sublimit of liability for flood applies only to property damage or also to what the policy refers to as time element, which is also known as business interruption, gross earnings, gross profit, leasehold interest, things like that. We submit that the flood limit clearly, unambiguously applies to both types of damages for several different reasons. I think the policy makes clear in the declaration section, which is at the front of the policy and applies to all, you know, it's sort of the preface and it sets the limits for the entire policy. And it makes clear there in the limits of liability section that the initial overall limit of $200 million applies to all loss or damage, regardless of the coverages involved. And then the policy proceeds to list a variety of sublimits. The first couple based on peril. So earth movement, i.e. earthquakes, landslides, volcanoes and the like. And the second being flood. It's clear from the structure of the policy that that initial language that refers to the overall limit applying to all losses and damage, regardless of coverage, also applies to the sublimits that follow, unless otherwise specified in the policy or in the particular sublimit. So that's the first basis. I think the court could resolve this case in our favor on that basis alone. But we have more. I mean, you're saying subsection A, or section A as you read it, means that the company never pays more than $30 million for any damage arising out of a flood. Correct. Well, you know, I'll just offer up the problem I have with your argument, which is in section B, section B covers, that describes the flood coverage, right? And it's unambiguous that flood coverage only extends to direct physical loss or direct physical damage. So you would expect that the flood sublimit applies to losses that are covered by the flood coverage. Is that fair? Yes. Now, the time element losses, if there were not a separate time element provision here, the time element losses would not be Yes. Right? So you have an altogether different section of the policy, section C, time element loss, under which that provides coverage for the losses at issue in this appeal. And yet you are seeking to invoke a sublimit for a section that does not apply in order to limit the higher $75 million cap on the provision that does apply. And so that's the problem I have with your argument. It seems to be citing a sublimit that is inapposite to the coverage that is at issue. If I may, Your Honor, so the property damage section, section B, describes the perils that are covered. Right. Because it's the perils that cause the physical damage to the property. In this case, we're talking about a flood. And it's there that flood is defined, earth movement is defined, and things like that. It's pretty straightforward. It is. But then when you go to section C, it specifically says that the policy ensures time element only where the time element loss directly results from direct physical loss or damage of the type insured by the policy. So C is completely contingent on B. Well, only in this sense. The type of loss must be covered. It is. The physical loss or damage is of a type covered by the flood. So that restrictive clause is satisfied. And otherwise, the flood section seems to be irrelevant to the coverage provided by this section, at least for purposes of this case. Well, I don't think it's irrelevant. I think it's the policy defines flood in one place. And it's not necessary, I think, to repeat it, the definition of flood. Repeat what? I mean, the definition of flood is too much water. Right. Right. So. So there's no reason to then repeat it in section C. What language, I mean, section B is just talking about direct physical loss or damage from, you know, as a shorthand, too much water. How would the repetition of that do any good for your argument when it is not flood, the flood section is not what's providing the coverage here? That's the problem. Repeating that language in subsection C would not make the flood section provide coverage because the flood section is crystal clear in its limitation to direct physical loss or damage, which is just an altogether different kind of loss than the loss we have in this appeal. Yes, Your Honor. But to go back to section A, which sets the limits of liability, I think that the language there makes it clear that those And so I think that makes it clear that it means that the sublimits apply both to property damage coverage and to time element coverage. Because it says repeatedly, again, not just in that prefatory statement, but then at the end of the sublimits, there is a succession of five different provisions, all of which make, I think, crystal clear that the parties contemplated that the sublimits would apply to all coverages regardless of. I have a question about the NYU case that you guys just submitted. Yes. It seems to me the language in those policies is pretty similar. I submit they're very similar, yes. However, there's one piece of language, and I'm curious whether it's in your policy. It says that time element coverage is subject to the applicable limit of liability that applies to the insured physical loss or damage. Do you have a provision like that? I believe that that's present in the later NYU policy, but not in the 2006 policy. And that's why NYU made the allegation that the insurer was trying to fraudulently induce them into agreeing to a policy that had narrower coverage, and the court decided, no, they actually provide the same coverage, even though that language was missing from the 2006 policy. And the 2006 policy was more like ours. It basically said the sublimits apply to all loss or damage regardless of coverage, which is what we have here. But we actually have more. So the presence of that language is not consequential, is what you're saying? Yes. The time element is limited or not by the FUD sublimit? Right. There's not a specific reference. But it would have been more clear if that kind of language had been in there? Yes. I think that would have been clear. But I think it's clear even without it. And if I may just refer to the additional provisions that we have, which I think make our case much stronger than the NYU case, or all of the cases that we cite. And I think it's important to note that the vast majority of cases that have similar language have come out in favor of the insurer. But we've got these five... But every, you know, I mean, every contract is different. I've written, we don't do this in gross. I agree. In insurance cases, I'm not saying you're doing this, but people all the time, well, this type of provision is construed. Well, it doesn't matter. I mean, we don't do it by type. We do it by the words that are chosen here. I couldn't agree more. But I think what's important and what's common across these cases is that when there are references to a sublimit applying to all loss or damage, regardless of the number of... That's other words. I mean, let's talk about other words. So if I can take you to the five provisions that follow the sublimits, I think it becomes inescapable. I think we have not just belt and suspenders here, but we have belt and five separate pairs of suspenders. Because the first provision says that the company shall not be liable for more than the sublimit specified in any occurrence, regardless of the number of coverages involved. The next one says sublimits stated in the policy apply in the aggregate per occurrence for all locations and coverages involved. The third one says the maximum sublimit amount collectible under this policy shall be the sublimit applicable for all loss or damage resulting from apparel, regardless of any other sublimit involved. The fourth one says when the limit of liability or a sublimit is shown as applying in the aggregate during any policy year, the company's maximum limit of liability will not exceed such limit during any policy year, regardless of the number of locations and coverages involved. There's this repetition of language that makes it, I think, clear that the sublimits are meant to apply not just to property damage, but also to time element, unless there are more specific limitations to particular types of time element or particular types of property damage loss. And that's not the case with the high hazard zone flood limit. It is just stated that there's a $30 million limit for floods for high hazard zones, annual aggregate. And I think the fact that there are a couple of sublimits that have mentioned to combine sublimits or that call out property damage and time element combined, such as for service interruption, I don't think that takes away from the clarity of what's here with regard to the high hazard flood zone. I'll grant you your best argument is under the limits of liability in Section A, where it says that this overall cap applies to loss or damage arising out of one occurrence, regardless of the coverage involved. What you need to do is to make the flood sublimit apply to time element losses. It could have been a lot clearer. I mean, you look at flood, if we were sort of looking at the structure of this policy, the high hazard zones for flood, which is exactly the phrasing of the $30 million sublimit, that's subsection 2 in the flood coverage. That's where that comes from, high hazard zones for flood. It's defined there. And then again, this flood section itself only applies to direct physical loss or damage. There's a strong inference in this section that this sublimit only applies to those kinds of damages, not to everything. But I think if you took that position to its logical extreme, then you wouldn't even have coverage for time element loss. No, you do. You have it in Section C. But it's contingent on physical loss occurring of the type that's covered. Of a type, which of course it happens. So if the coverage is contingent, I think it logically makes sense that the sublimit that applies to the property damage also extends to the contingent time element loss. Which is, if the time element is contingent on the property damage loss, I think the sublimit naturally and logically should apply to both. So you're saying you have this flood coverage, which has the flood sublimit. The time element applies only to time element losses resulting from the flood. And then the limitation provision in Section A is any losses arising out of a flood. Exactly. And it's sort of an identical relationship. They both have to have a causal relationship with the flood. Okay, well, any questions for right now? Have you rewritten this policy a little bit? Since then, as Judge Kessler said, every policy is different. I think with this policy, this was a broker negotiated policy. Yeah. So I have no doubt that there are other policies with different language. But I think the policy, this policy language is quite clear. So I would reserve four minutes for a little. All right. You'll have it. Mr. Aioli. Thank you. May I please support Mr. Vadas' colleagues? I'd like to respond just briefly to a couple of points that Mr. Vadas made in response to questions from the Court and points that he independently made. And I need to say, first off, I think, though, that our principal argument would be based on Judge Edmund's opinion. I wish we could have shown the same economy of words that she showed by using 15 pages to render a plain meaning interpretation of the policy and then follow on to show why, at best, it would be unclear or ambiguous. But turning to the argument we've heard today, first of all, Judge Nalbandian, you asked a question about the NYU policy and a specific provision in a policy in the second opinion. And did it exist here? And the point is, no, it doesn't. But it's a fine example of what could have been written and, in fact, what we see in many of these policies, where there's a very clear statement that if you have a limit, it applies to property damage and time element. That's easy to write. Mr. Vadas said, well, this policy has belt and suspenders. It has five belts and suspenders. Now, I'm not criticizing the argument. The argument has been very capably developed on the part of the insurance company, but I think it's fundamentally heretical to the notion of how policies or contracts are to be interpreted. No, we had heresy with the insurance policies. You got what? An additional $25 million, was it? This would be an additional $25 million, not including the interest component. $29, right? Yes, the interest would put it up to $29. Oh, okay. Yes. So my point is there are many, many ways, and we said some of these in the briefs, and if you go through the policies, many policies have very clear single-sentence statements. But it's not a comparative exercise here. It's just, is this clear enough? Yes. Could it have been better? Yes, I take your point. I mean, how could they be more clear than saying all? All coverages, you know, regardless of the number of locations or coverages involved in the occurrence. I mean, doesn't that set the background rule, which is this sublimit is going to apply to anything resulting from a flood, and time element has to result from the flood or else you don't get coverage for it, right? Your point is a great one, but it applies to the blanket limit of $200 million, not the flood limit. The flood limit, the sections of the policy are separate, and so Section B for property damage where flood coverage occurs is totally separate from Section C, and this came out in the initial argument, totally separate coverage. There need to be words, in our view, that bridge the gap from B to C, and there are no words. How about in A? I mean, if you're saying the language in limits of liability, Section A, limits of liability, referring to all loss or damage resulting or, I'm sorry, arising out of one occurrence, here being the flood, no matter the coverages involved, et cetera. You're saying that doesn't apply to the flood sublimit, that language? Is that what you're arguing, or are you not arguing that? Your Honor, are you looking at page 4? Yeah, page 11 of page ID 24 of the record, I guess. Page 4 of the policy. Yes. Page 4. So what I'm saying is if you look at that lead-in paragraph under limits of liability. That's exactly what I'm talking about. That is a $200 million blanket limit, and I would say below that it tells you that flood as defined is subject to a flood limit, but doesn't say time element or doesn't say property damage. Oh, I totally get that. But are you saying the time element is subject to no limit, not even the $200 million? The blanket is certainly subject to the blanket limit. You can't get more out of a policy than they've extended to you. Okay. And that blanket limit is here in Section A? It is. So I don't understand. So the other limits in Section A don't apply to time element, just this one? How can I say? The blanket limit applies overall. A sublimit applies to what it is stated to apply to. Sure. And in the case of flood, that's physical damage. Go ahead. Go ahead. No, go ahead. Does this preamble language that I've read about all loss or damage arising out of one occurrence, does that language apply to each of the limits and sublimits in this section, the ones that follow? Yes, insofar as if all the loss was added up, you can never get above that total blanket limit. Well, I mean, is it fair, though, to read the $30 million for flood for high hazard zones, to read that as meaning the company shall be liable under this policy, or shall not be liable for more than $30 million of all loss or damage arising out of one occurrence if it's a flood in a high hazard zone? No, I don't think that's fair at all. Why not? Because flood is limited by the policy only to property damage. That would not be accurate because you could have many other losses. Right. I mean, that's the nub of this case. That's what we're talking about. It is. And so I think Mr. Vadas is saying that this limitation provision has a relationship to an occurrence. You can't get more than the company's applicable limit, whether it's $200 million or $30 million. You can't get more than that limit for any damage or loss arising out of one occurrence. Here the occurrence is the flood. That's just sort of a causal relationship that's described there, not a coverage relationship. And the same causal relationship, it turns out, is what triggers time element coverage in Section C. Time element coverage, those losses are covered only if they result from a physical loss of a type insured by the policy. So that coverage only applies if it's caused by, in this case, a flood. And he's saying that same causal relationship, damages caused by an occurrence, is what puts the cap on as well as provides the coverage. That doesn't seem crazy to me. Well, Your Honor, I don't think the words say that at all. It's certainly saying if you've got flood as defined, then you're not going to get more for flood as defined in sublimit. And if you've got something else other than flood, you either get what's subject to the blanket limit if it's not sublimited, like time element, or you get the other sublimit. And what this descends into, perhaps, is the Michigan law and how contracts are interpreted. Because, I mean, the worst case... You win a tie, right? I get that. But, I mean, so this preamble language, the limits of liability that we've been talking about, your view is that it only applies to the overall $200 million cap, nothing else. That's right. Okay. Well, we'll see what Mr. Battis has to say when it's his turn. But you go ahead. What I would say is, there's some time left, is a couple of things. Perhaps I should make a comment on the prejudgment, post-judgment interest. I think it's an opportunity for the Court. I don't want to presuppose an outcome. You can choose to spend your time on whatever you want here, you know. Okay. All right. Well, my point is, I'll make it brief, it would be a wonderful opportunity to clarify the law in the Sixth Circuit for the starting point for post-judgment interest where there is a prejudgment interest issue. Okay. I'll say no more. All right. I'll say no more. So tell us why you should actually get to that point. Okay. Well, because there needs to be a word, a term in the policy that allows one to jump from property damage to time element. It's easy to write. It would be simple to do. And this is a limitation or exclusion. But you only get the time element coverage if it's linked to some physical damage, right? Well, that's true, but if... It has to be resulting from direct physical loss or damages of the type insured by this policy, meaning physical damage from a flood, which is of the type insured, right? That's... So why wouldn't it... Why doesn't it just make sense that if the time element comes from the flood, you have to link it to the flood in order to get coverage, that you wouldn't be subject to the exact same limit that would apply to a flood? I'd say two things. First of all, this policy does have some provisions. If you look at page 5, that show that they are combined sublimits, meaning time element and property damage combined. And that appears... Page 5 of the policy, page ID 3787, if that helps. That's an illustration, and this court noted in the prior decision, that when the policy wants to combine limits, time element and property damage, it does so. It's a very... It would be very easy to do that. So that's... You're talking about the service interruption, property damage, and time element? Combined, correct. And there are some other places, actually. What is that? I mean, what's that getting at in your view? Service interruption. Service interruption would be if you have power to the facility that's interrupted. So this would be only time element damages only resulting from a service interruption? Correct. There's another one on page 6, protection and preservation of property, time element and property damage combined. Which way does that cut? I'm confused. The contingent time element is not the same as time element, right? Correct. So they picked a different limit for contingent time element, presumably because time element itself was covered by the other limit? No. Why would you specifically mention that one? Well, contingent time element is a special type of coverage. It's if your supplier or customer has property damage. Because time element, of course, is subject to 30 million. Well, I don't think that's fair. Why would they mention the specific one if they weren't assuming that the general one was already covered? Well, Your Honor, there would be no reason to say they are both combined there. The point would be that they've said where they're combining limits. And time element can be much more, much more significant than property damage. Let's take the case of a software company, a small, small, old repurposed warehouse that has not much property damage, but they're making a lot of very expensive products. Time element can be on its own a very expensive thing. It should be limited specifically in our view. I don't follow what you've said. What I'm saying, what I'm trying to say is to say that there's a contingent time element limit of $5 million in FUD shows that if general time element were going to be limited, then it would have been said so specifically. And there's good reason not to. And, I mean, Judge Pregerson in the Northrop Grumman case explains why this is so. He says, look, there are very good reasons why you wouldn't have a limit on general time element, whereas the property coverage would be limited. Well, it just depends on what the parties want to agree to. Some folks might be real worried about time element, and they'll pay more for just a really wide open time element and maybe a limited flood. And other ones may not care about floods or time element, but care a lot about floods. I mean, there isn't some, you know, metaphysical reality that these things are conforming to, you know. I agree. And so in the end, what it comes down to really is how a Michigan, how under Michigan law, a contract ought to be applied. And this is for sure a limitation or an exclusion. I mean, the answer to the complaint says this claim is limited or excluded by the flood limits. And as Judge Edmonds pointed out, a limitation or exclusion in a policy has got to be clearly expressed. And if in doubt, then the policyholder wins. Same thing with ambiguity. We've got Judge Edmonds saying plain reading. I'm just reading the words here. The plain reading is time element is not limited. And if you entertain the opposing reading, then you've got two conflicting plain readings at a minimum. I mean, there's no reason to think. I mean, Judge Edmonds did a fine job. The contract said losses arising out of flood are limited to 30 million. And then the time element said time element damages arising out of flood are covered. The 30 mil would apply to the time element, right? It's a tricky question only because you really have to see how the words were drafted. The words I just said, hypothetically. I would have to say, I'm just going to have to say no, only because I feel like it would have to say something like we see all the time. Time element is subject to the same limit that applies to property damage. On that, absolutely. Okay. All right. I appreciate your argument. I appreciated your brief. Thank you. Mr. Vadas. Your Honors, a few points I'd like to make. Mr. Aioli conceded that the blanket limit of $200 million applies to time element, even though time element is never mentioned in that overall limit. No, I mean, obviously the overall policy cap is going to apply to anything in the policy. But it applies to each occurrence, regardless of the coverages. I mean, you could come up with an interpretation that says, well, one occurrence is the property damage and another occurrence is the other damage. But everybody agrees that that's not the case, that it applies to both losses because of the. . . But the overall limit on the policy is in Section A, right? It is in Section A. This is the only language on page 4? That's where we find it? Yes. Okay. So what you need to do is get this paragraph under limits of liability, which says, I mean, all that says is the company is not liable under this policy for more than its proportion of $200 million for all loss or damage arising out of one occurrence, regardless of the number of coverages involved. Right. You need to get that somehow to apply to $30 million for flood for high hazards on the next page, notwithstanding that this paragraph, just sitting there by itself, says we're not liable for more than $200 million. Full stop. Right. And I think the way you get there is two ways, or six ways in total, but two sets of ways. One is that language, I think it's clear from the structure, that that language about the overall limit applying to each occurrence, regardless of the coverages, and to all loss or damage, I think when you look at this all together, that language extends down to the sublimits because it says that that limit applies unless more specifically limited below. Where? The first paragraph under limits of liability, where it says that the $200 million applies for all loss or damage arising out of one occurrence, regardless of the number of coverages, unless more specifically limited. And $30 million is below. Is below. And then I think the other additional five ways are those repeated. You're saying it goes down through pages five and six and seven from $200 million to whatever it is. Exactly. Yes. So that's my belt. And then my suspenders follow the sublimits where it just says repeatedly that the sublimits above apply to all loss or damage, regardless of the coverages involved. I don't think that could be much clearer. Those things refer back. Trust me, it could be. Okay. Okay. But on that point, I think Mr. Ayole also, you know, said there are many ways this could have been made clearer. I think the Sixth Circuit in the earlier version of this case that Judge Merritt said on the panel, addressed that argument when it said we cannot rewrite an otherwise valid contract simply because after the fact, lawyers can think of better ways to structure similar deals. The fact that Federal Mogul now believes a different policy would be superior to the policy for which it originally contracted does not demonstrate that the contracted policy as construed by the insurer is unreasonable. And I think that same principle applies here. One other point I'd like to make is that I think Judge Kethledge, you said if there's a tie, that Federal Mogul wins. I think that's based on an erroneous presumption. There's been this sort of presumption throughout that this policy was drafted by the insurer. I think there's actually no record evidence of that, and I think there are actually, our understanding is to the contrary. It is at least what does exist on the record. It matters who drafted. Michigan law talks about insurer and insured. And in the event of ambiguity, the insured wins. It's construed against the insured. With all due respect, I think that is, language that refers to a tie going to the insured is a sloppy way of referring to the doctrine of contra profferentum, which applies to contract law generally, which stands for the proposition that if there's ambiguity, it's construed against the drafter of the contract. Usually, if it's your homeowner's policy or me, we're not negotiating with State Farm. But in a case like this, you've got two very big companies. They're represented by the world's largest broker. We totally got this. Okay. So I think that rule doesn't apply here, and I think that's important to note. Okay. So your time's up, and we're going to have to call quits. Okay. Thank you, Your Honor. Just in fairness to Mr. Aioli here. Understood. I appreciate it. Thank you both. Thank you for your briefing.